# Exhibit A

Filing # 68071849 E-Filed 02/16/2018 12:03:06 PM

```
┌─────────────────────────────┐
│      RETURN OF SERVICE      │
└─────────────────────────────┘
```

PERSON TO BE SERVED:

RECEIPT NUMBER: 0000511-18

    SECRETARY OF STATE
    MNP,LLP, A CANADIAN LIMITED PARTNERSHIP
     2661 EXECUTIVE CTR CIR

---

PLAINTIFF: EUROSPORT ACTIVE WORLD CORP
DEFENDANT: MNP,LLP
TYPE WRIT: SUMMONS,COMPLAINT FOR DAMAGES,EXH 1-3

    COURT: MIAMI DADE                    COURT DATE:
    CASE #: 2018002177CA01               COURT TIME:

---

Received the above-named writ on February 5, 2018, at 10:37 AM, and
SERVED / NONSERVED the same on the ___6___ day of ___FEB___ ,
20 _18_ , at _2.25_ AM / PM , in LEON County, Florida, as follows:

____  GOVERNMENTAL AGENCY / OFFICIAL / ASSOCIATION / CORPORATION
      By delivering a true copy of this writ together with a copy of the
      initial pleadings, if any, with the date and hour of service endorsed
      thereon by me to DAVID FUGETT OBO

      as  SECRETARY OF STATE  of the within named Defendant

      to-wit:  MNP,LLP, A CANADIAN LIMITED PARTNERSHIP

____  NOT FOUND
      By returning said writ unserved for the reason that after due
      diligence to locate, the named person to-wit: _____
      could not be found in LEON County, Florida.
      _____
      _____


SERVICE COST: $40.00                     WALT MCNEIL, SHERIFF
RM, CIVIL CLERK                          LEON COUNTY, FLORIDA


MAIL TO:                         BY: _____

    COREY E HOFFMAN, PA              [ ] DEPUTY SHERIFF  [ ] PROCESS SERVER
    3250 MARY ST STE 303
    MIAMI FL 33133                                       TRACI BAKER
                                           _____
                                                      Print Name
```

Filing # 67056887 E-Filed 01/25/2018 04:27:25 PM

| | | |
|---|---|---|
| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.<br>☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
| **DIVISION**<br>☒ CIVIL  ☐ OTHER<br>☐ DISTRICTS | **SUMMONS 20 DAY CORPORATE SERVICE**<br>**(a) GENERAL FORMS** | **CASE NUMBER**<br>2018 002177 CA 01 |
| **PLAINTIFF(S)**<br>EUROSPORT ACTIVE WORLD CORP.,<br>A FLORIDA CORPORATION | **VS.  DEFENDANT(S)**<br>MNP, LLP, A CANADIAN LIMITED<br>LIABILITY PARTNERSHIP | **SERVICE** |

THE STATE OF FLORIDA:

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on

defendant(s): MNP, LLP, A CANADIAN LIMITED PARTNERSHIP BY SERVING:

THE SECRETARY OF STATE  OF FLORIDA AS AGENT FOR A NON-RESIDENT

PARTNERSHIP DOING BUSINESS IN THE STATE STATE OF FLORIDA, PER

F.S. 48.061 and F.S. 48.071, Clifton Bldg., 2661 Executive Ctr. Cir., Tallahassee, FL 32301

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney: Corey E. Hoffman, P.A.

whose address is: 3250 Mary Street, Ste 303, Coconut Grove, FL 33133

within 20 days * **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies,
or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days.
When suit is brought pursuant to 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons
on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before
service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for
the relief demanded in the complaint or petition.

| | | |
|---|---|---|
| **HARVEY RUVIN**<br>**CLERK of COURTS** | *Conelle Brown* 164659<br><br>DEPUTY CLERK | **DATE**<br>1/30/2018 |

## AMERICANS WITH DISABILITIES ACT OF 1990
### ADA NOTICE

"If you are a person with a disability who needs any accommodation in order to
participate in this proceeding, you are entitled, at no cost to you, to the provision of certain
assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson
E. Thomas Courthouse Center, 175 NW 1ˢᵗ Ave., Suite 2702, Miami, FL 33128, Telephone
(305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355 at least 7 days before your
scheduled court appearance, or immediately upon receiving this notification if the time
before the scheduled appearance is less than 7 days; if you are hearing or voice impaired,
call 711."

CLK/CT. 314  Rev. 02/16                                    Clerk's web address: www.miami-dadeclerk.com

Filing # 66928399 E-Filed 01/23/2018 04:40:45 PM

IN THE CIRCUIT COURT OF THE 11<sup>TH</sup>
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.:

EUROSPORT ACTIVE WORLD CORPORATION,
a Florida corporation,
     Plaintiff,

vs.

MNP, LLP,
a Canadian limited liability partnership,
     Defendant.

_____/

## COMPLAINT FOR DAMAGES

THE PLAINTIFF, EUROSPORT ACTIVE WORLD CORPORATION (hereinafter "EAWC"), sues Defendant, MNP, LLP (hereinafter "MNP"), for Breach of Contract and for grounds states the following:

1. Plaintiff, EAWC, is a Florida corporation in the renewable technology business. It is registered and authorized to do business in the State of Florida, with an office in Miami-Dade County, Florida.

2. Defendant, MNP, is a Canadian limited liability partnership that conducts business as an accounting and auditing firm. MNP has conducted business within the State of Florida, specifically with the Plaintiff, EAWC, acting as auditor for EAWC to audit the 2015 and 2016 finances of EAWC.

3. As a result of the foregoing actions, jurisdiction and venue are proper in the Circuit Court for Miami-Dade County, Florida.

## FACTS:

4. EAWC hired MNP to audit its finances pursuant to EAWC's goal to complete the filing of an S-1 Registration Statement ("S-1") with the Securities and Exchange Commission ("SEC") that was already in progress. To complete their SEC S-1 filing, EAWC retained MNP to do the audit of EAWC's fiscal years ended December 31, 2015 and December 31, 2016, in order to obtain MNP's opinion on the company's annual financial statements,

1

which comprises the balance sheets for Year End 2015 and 2016; the statements of stockholders' equity and cash flow for the years then ended, and a summary of significant accounting policies and other explanatory information. The audit was to have been performed in accordance with the standards established by the Public Company Accounting Oversight Board ("PCAOB"). The parties entered into an agreement for this purpose on June 12, 2017. A copy of the agreement is attached hereto as Plaintiff's Exhibit "1".

5.  The relationship between EAWC and MNP commenced with EAWC supplying MNP with its complete financial records for the years 2015 and 2016. EAWC also made payments to MNP on this agreement on June 14, 2017 in the amount of CAN$ 26,750.00 and a second payment on July 17, 2017 again in the amount of CAN$ 26,750.00.

6.  Further, during the first meeting between EAWC and MNP in June 2017, EAWC explained its relationship between itself and a Mexican corporation named Tecnologias Verdes SA de CV ("TECNOLOGIAS"). TECNLOGIAS is an exclusive distributor of the technological solutions and products for the region of Mexico and Latin America for EAWC. MNP's agent and auditor, Mr. Atin Gupta ("GUPTA") confirmed in that meeting that this information about the nature of TECNOLOGIAS as not being a Variable Independent Entity ("VIE") was understood.

7.  At the beginning of August, 2017, MNP provided EAWC forms regarding the question of whether TECNOLOGIAS was or was not a VIE. EAWC responded to the forms and supplied a memorandum which established TECNOLOGIAS was not considered a VIE with EAWC.

8.  On October 22, 2017, MNP again brought back up the question of whether TECNOLOGIAS was a VIE. At that time, MNP requested the Balance Sheet of TECNOLOGIAS from EAWC's principals. EAWC delivered the request to TECNOLOGIAS, which declined to submit the requested bank statements. However, a legal opinion (Plaintiff's Exhibit "3") was sent to MNP with an explanation why there were no legal grounds for requiring EAWC to submit the requested financials of this independent Mexican entity to MNP.

9.  On November 1, 2017, MNP issued an Audit Report for the years ending in December 31, 2015 and December 31, 2016, as well as the financials as contracted. The Audit Report

2

was completed, and the company was cleared with no findings or indications of wrong doing. This was reflected in the Audit Report (A redacted copy of said Audit Report is attached as Plaintiff's Exhibit "2"[1]).

10. For the next four weeks, EAWC repeatedly contacted MNP requesting that MNP sign the completed audit so that EAWC's S-1 could be filed.  MNP did not respond to EAWC's repeated requests to have MNP sign the completed audit.  The only communications from MNP were reminders for the Plaintiff to pay the balance for the delivered audit.

11. No one from MNP responded to any phone calls or emails sent by the Plaintiff during the month of the November.

12. On December 1, 2017, Plaintiff found an online contact from MNP. And, on December 7th, Mr. Danziger, representing MNP, cancelled the engagement with EAWC based on the allegation that EAWC would not deliver the aforementioned bank statements of the unrelated entity.

13. The agreement between EAWC and MNP requires EAWC to deliver all related party documents requested by the auditor and EAWC complied with that requirement.

## COUNT I-BREACH OF CONTRACT

14. The Plaintiff, EAWC re-alleges the facts set forth in Paragraphs 1-13 as if set forth fully herein.

15. The Defendant, MNP, breached the Contract as follows:

    A.  As agreed in the engagement letter, MNP fail to notify the audit committee and management of EAWC in an official written manner regarding the following:

- MNP audit responsibility under PCAOB standards and any potential identified issues of concern during the audit process.

- Any significant difficulties encountering in performing the audit.

- The non-performance of the overall audit strategy timing of the audit and potential risks.

- Any anticipated modifications or cancellation of the audit report presented to EAWC on November 1st, 2017.

---

[1] For contractual reasons and privacy purposes, the full Audit Report cannot be filed with the Complaint.  The complete report will be filed under seal.

- Any potential identified reason to withdraw from the engagement.
- During the month of November 2017, MNP refused to respond to EAWC's repeated requests to complete the audit and other requests related thereto, even though MNP had completed the audit.
- MNP refused to finalize and sign off on the audit and allow the Plaintiff to move forward with its S-1 filing.

16. The failure to sign the audit was also a further breach of the contract and has caused damage to EAWC in the following manner:

   A. EAWC has disgruntled investors and shareholders who anticipated the completed audit in November, 2017 to be filed and are now threatening to file lawsuits against EAWC.

   B. The payments EAWC made to MNP in the total amount of CAN$ 53,500 should be refunded.

17. Based on the foregoing, Plaintiff, Eurosport Active World Corporation, demands damages against the Defendant. MNP, LLP in an amount in excess of the jurisdictional minimum of this Court.

   **WHEREFORE,** Plaintiff, Eurosport Active World Corporation, demands judgment in excess of the jurisdictional minimum of this Court against the Defendant, MNP, LLP, as to Count I, plus an award of attorney fees, plus court costs and any other award this Court deems just and proper.

## COUNT II-PROFESSIONAL NEGLIGENCE

18. The Plaintiff, EAWC re-alleges the facts set forth in Paragraphs 1-13 as if set forth fully herein.

19. Under the contract (Plaintiff's Exhibit 1), MNP was required to perform the audit to completion. It owed this duty to EAWC.

20. MNP breached this duty when MNP had completed the audit and had found no findings or indications of wrongdoing in EAWC's financial records, yet MNP failed to sign off on the audit, as was contracted for and agreed to between EAWC and MNP.

21. As a result of the foregoing negligent actions of MNP, EAWC was damaged.

4

22. As a proximate cause of MNP's negligence (by MNP failing to sign off on the completed audit), at least one investor who had agreed to invest $4,000,000 in EAWC securities and an underwriter who had pledged to obtain a $10,000,000 capital raise for EAWC, contingent on EAWC's successful SEC S-1 filing, EAWC was damaged in the amount of $16,000,000.

23. Based on the foregoing, Plaintiff, Eurosport Active World Corporation, demands damages against the Defendant MNP, LLP in an amount in excess of the jurisdictional minimum of this Court.

**WHEREFORE,** Plaintiff, Eurosport Active World Corporation, demands judgment in excess of the jurisdictional minimum of this Court as to Count II, against the Defendant, MNP, LLP, plus court costs and any other award this Court deems just and proper.

Dated this 23 day of January 2018.

Respectfully submitted,

COREY E. HOFFMAN, P.A.
Attorney for Plaintiff
Florida Bar No.: 229776
3250 Mary Street, Suite 303
Coconut Grove, FL 33133
Phone: (305) 443-5600
Fax: (305) 443-6624
Primary: corey@coreyhoffman.com
Secondary: chris@coreyhoffman.com

# PLAINTIFF'S EXHIBIT "1"

June 12, 2017



Mr. Ralph Hofmeier & Ms. Irma Velazquez
Eurosport Active World Corporation
2000 Ponce de Leon Blvd, 6th floor
Miami, Florida 33134

Dear Mr. Hofmeier & Ms. Velazquez:

This letter will confirm the arrangements discussed with you regarding the services we will render to Eurosport Active World Corporation ("the Company") commencing with the fiscal years ended December 31, 2016 and 2015.

## Objective, scope and limitations

Our statutory function as auditors of the Company is to report to the shareholders by expressing an opinion on the Company's annual consolidated financial statements, which comprises the balance sheets as at December 31, 2016 and 2015, and the statements of operations and comprehensive income (loss), and statements of stockholders' equity and cash flows for the years then ended, and a summary of significant accounting policies and other explanatory information. We understand that the consolidated financial statements are to be included in documents to be filed with the United States Securities and Exchange Commission (the "SEC"). We will conduct our audit in accordance with the standards established by the Public Company Accounting Oversight Board (PCAOB) (United States) and will include tests of the Company's accounting records and other procedures we consider necessary to enable us to express our opinion. The objective of an audit of the financial statements is the expression of an opinion on the financial statements. Accordingly, the objective of our audit is the expression of an opinion about whether the Company's consolidated financial statements are fairly presented, in all material respects, in conformity with accounting principles generally accepted in the United States of America (US GAAP).

At the conclusion of our examination, we will submit to you a report containing our opinion on the consolidated financial statements. If, during the course of our work, it appears for any reason that we will not be in a position to render an unqualified opinion on the consolidated financial statements, we will discuss this with you. If, for any reason, we are unable to complete our audit or are unable to form or have not formed our opinion, we retain the right to take any course of action permitted by professional standards or regulatory requirements including declining to express an opinion or issue a report or withdrawing from this engagement. In that circumstance, we will notify the audit committee (or equivalent) and management. We will also read the documents to be filed with the SEC that include our audit reports and will report any inconsistencies between the documents filed with the SEC and the consolidated financial statements to you and or your SEC counsel.

An auditor conducting an audit in accordance with the standards established by the PCAOB obtains reasonable assurance that the consolidated financial statements taken as a whole are free of material misstatement, whether caused by errors, fraudulent financial reporting, misappropriation of assets, or violations of laws or regulations that are attributable to the entity or to acts by management or employees acting on behalf of the entity. The audit will include examining, on a test basis, evidence supporting the amounts and disclosures in the consolidated financial statements; therefore, our audit will involve judgment about the number of transactions to be examined and the areas to be tested. Our procedures will include tests of documentary evidence supporting the transactions recorded in the accounts, tests of physical existence of inventories, and direct confirmation of certain assets and liabilities by correspondence with selected customers, creditors, and financial institutions. In addition, our audit includes evaluating the appropriateness of accounting policies used and the reasonableness of accounting estimates made by management, as well as evaluating the overall presentation of the consolidated financial statements. It is important to recognize that an auditor cannot obtain absolute assurance that material misstatements in the consolidated financial statements will be detected because of factors such as the use of judgment, selective testing of data, inherent limitations of controls, and the fact that much of the audit evidence available is persuasive rather than conclusive in nature.





ACCOUNTING  ›  CONSULTING  ›  TAX
SUITE 300, 111 RICHMOND STREET W, TORONTO ON, M5H 2G4
1.877.251.2922  T: 416.596.1711  F: 416.596.7894  MNP.ca

Furthermore, because of the nature of fraud, including attempts at concealment through collusion and forgery, an audit designed and executed in accordance with the standards established by the PCAOB may not detect a material fraud. While effective controls reduce the likelihood that misstatements will occur and remain undetected, they do not eliminate that possibility. Therefore, we cannot guarantee that fraud, misstatements and non-compliance with laws and regulations, if present, will be detected when conducting an audit in accordance with the standards established by the PCAOB.

## Our responsibilities

We shall examine the consolidated balance sheets of the Company as at December 31, 2016 and 2015 and the related consolidated statements of operations and comprehensive income (loss), and statements of stockholders equity and cash flows for the years then ended. Our examination will be made in accordance with the standards established by the PCAOB. Accordingly, we will plan and perform our audit to provide reasonable, but not absolute, assurance of detecting fraud, material misstatements and material weaknesses in internal control that have a material effect on the consolidated financial statements taken as a whole, including non-compliance with laws and regulations whose consequences have a material effect on the consolidated financial statements.

The Rules of Professional Conduct and PCAOB Rule 3526 *Communications with Audit Committees Concerning Independence* require that we are independent when conducting this engagement. We will communicate in writing to the audit committee (or equivalent) any relationships between the Company (including related entities) and MNP LLP ("MNP") that may bear on our independence. Further, we will confirm our independence with respect to the Company. If matters should arise during this engagement that can be assumed to have impaired our independence, we may need to withdraw from this engagement.

Because our audit is designed to provide reasonable, but not absolute, assurance and because we will not perform a detailed examination of all transactions, there is some risk that material misstatements of the consolidated financial statements or material weaknesses in internal control may exist and not be detected by us. However, if any of the following matters are identified, they will be communicated to the appropriate level of management:

* misstatements, resulting from error, other than immaterial misstatements;
* fraud or any information obtained that indicates that a fraud may exist;
* events or conditions identified that may cast significant doubt on the entity's ability to continue as a going concern;
* any evidence obtained that indicates non-compliance or possible non-compliance with laws and regulations, other than one considered inconsequential, has occurred;
* significant deficiencies and material weaknesses in the design or implementation of controls to prevent and detect fraud or misstatement; and,
* related party transactions identified that are not in the normal course of operations and that involve significant judgments made by management concerning measurement or disclosure.

The matters communicated will be those that we identify during the course of our audit. Audits do not usually identify all matters that may be of interest to management in discharging its responsibilities. The type and significance of the matter to be communicated will determine the level of management to which the communication is directed.

We are also responsible for communicating with the audit committee (or equivalent) about certain other matters related to our audit, including:

* our audit responsibility under PCAOB standards;
* information relating to our independence with respect to the Company;
* the overall audit strategy, timing of the audit and significant risks;
* the Company's critical accounting policies;
* the quality of the Company's accounting principles;
* management's judgments and sensitive accounting estimates;
* significant unusual transactions;
* our evaluation of the quality of the Company's financial reporting;
* if applicable, our evaluation of the Company's ability to continue as a going concern;



- uncorrected and corrected misstatements;
- difficult or contentious issues about which we consulted with others;
- any disagreements with management about matters that could be significant to the Company's consolidated financial statements or our report;
- any consultations management made with other accountants;
- any issues discussed with management prior to retention;
- anticipated modifications to our audit report
- any significant difficulties encountered in performing the audit;
- other information in documents containing audited consolidated financial statements, such as the Company's annual report; and,
- other matters as considered necessary.

We are also responsible for ensuring that the audit committee (or equivalent) receives copies of certain written communications between us and management, including management representation letters and written communications on accounting, auditing, internal control, or other matters.

Furthermore, we will consider the Company's controls over financial reporting for the purpose of identifying types of potential misstatement, considering factors that affect the risks of material misstatement, and determining the nature, timing and extent of auditing procedures necessary for expressing our opinion on the consolidated financial statements. This consideration will not be sufficient to enable us to render an opinion on the effectiveness of controls over financial reporting nor to identify all significant deficiencies or material weaknesses in the Company's system of financial controls. However, we will communicate in writing to the audit committee (or equivalent) and the appropriate level of management of any significant deficiencies and material weaknesses in controls that come to our attention.

Any significant deficiency or material weakness identified because the audit committee's (or equivalent) oversight of the Company's external financial reporting and internal control over financial reporting is ineffective will be communicated in writing to the Company's board of directors.

**Management's responsibilities:**

The operations of the Company are under the control of management, which has responsibility for the accurate recording of transactions and the preparation and fair presentation of the consolidated financial statements in accordance with US GAAP. This includes the design, implementation and maintenance of internal controls relating to the preparation and presentation of the consolidated financial statements.

During the course of our audit, you will be required to provide and make available complete information that is relevant to the preparation and presentation of the consolidated financial statements, including financial records and related data, copies of all minutes of meetings of shareholders, directors and committees of directors, as well as personnel to whom we may direct our inquiries. As well, information relating to any known or probable instances of non-compliance with legislative or regulatory requirements (including financial reporting requirements), non-compliance or possible non-compliance with laws and regulations and all related parties and related party transactions will need to be provided. You will be required to allow access to those within the entity from whom the auditor determines it necessary to obtain audit evidence.

Management is responsible for:
- the establishment and maintenance of adequate records;
- the selection and application of accounting principles;
- the safeguarding of assets; and
- adjusting the consolidated financial statements to correct material misstatements.

Management's responsibility with respect to fraud and misstatement includes the design and implementation of controls for its prevention and detection; an assessment of the risk that the consolidated financial statements may be materially misstated; disclosure of situations where fraud or suspected fraud involving management, employees who have significant roles in controls, or others, where the fraud could have a material effect on the consolidated financial statements, have been identified or allegations have been made; and communicating your belief through the management representation letter that the effects of any uncorrected consolidated financial statements misstatements aggregated during the audit are

3



immaterial, both individually and in the aggregate, to the consolidated financial statements taken as a whole.

As management, you will also be asked to provide us with information relating to recognition, measurement and disclosure in the consolidated financial statements, specifically relating to:

* the identification of the applicable financial reporting framework;
* an assessment of the reasonableness of significant assumptions underlying fair value measurements and disclosures;
* an assessment of the entity's ability to continue as a going concern, including any future plans or intentions that may affect the carrying value or classification of assets or liabilities;
* the measurement and disclosure of related party transactions;
* an assessment of all areas of measurement uncertainty known to management requiring disclosure;
* claims and possible claims, whether or not they have been discussed with the Company's legal counsel;
* other liabilities and contingent gains or losses, including those associated with guarantees, whether written or oral, under which the Company is contingently liable;
* whether the Company has satisfactory title to assets, and whether liens or encumbrances on assets exist, or assets are pledged as collateral;
* compliance with aspects of contractual agreements that may affect the consolidated financial statements; and
* subsequent events

In accordance with the standards established by the PCAOB, we will request a letter of representation from management at the close of our examination in order to confirm oral representations given to us and reduce the possibility of misunderstanding concerning matters that are the subject of the representations. Specifically, we will request written confirmation of significant representations provided on matters that are directly related to items that are material, either individually or in the aggregate, to the consolidated financial statements, not directly related to items that are material to the consolidated financial statements, but are significant, either individually or in the aggregate, to the engagement, and matters relevant to your judgments or estimates that are material, either individually or in the aggregate, to the consolidated financial statements. These representations are used as evidence to assist us in deriving reasonable conclusions upon which our audit opinion is based.

We are required to read any annual report to shareholders and filings with the SEC that contains our independent auditors' report. We will read the annual report for the purpose of determining whether other information in the annual report (including the manner of its presentation) is materially inconsistent with information in the consolidated financial statements or management's assessment of the effectiveness of the Company's internal control over financial reporting. We assume no obligation to perform procedures to corroborate such other information as part of our audit.

Further, it is agreed that in any electronic distribution, such as the SEC's Electronic Data Gathering, Analysis, and Retrieval ("EDGAR") system, management is solely responsible for the accurate and complete reproduction of our report and the subject matter on which we reported, and for informing us of any subsequent changes to such documents. Management also agrees that, before filing any document in electronic format with the SEC with which we are associated, we will be advised of the proposed filing on a timely basis. We will provide the Company a signed copy of our report and consent. These manually signed documents will serve to authorize the use of our name prior to the Company's electronic transmission. Management will provide us with a complete copy of the document accepted by EDGAR. However, we are responsible to read the documents to ensure accuracy, and consider the appropriateness of other information accompanying the audited consolidated financial statements, upon initial posting.

If the Company plans any reproduction or publication of our report, or a portion thereof, printer's proofs of the complete documents should be submitted to us in sufficient time for our review, prior to making such documents publicly available. It will also be necessary for you to furnish us with a copy of the printed report. The Company may wish to include or incorporate by reference our independent auditors' report on these consolidated financial statements in a registration statement proposed to be filed under the Securities Act of 1933 or in some other securities offering. If so, you agree not to include our independent auditors' report or make reference to our Firm without our prior permission or consent. Any agreement to perform work in



connection with an offering, including an agreement to provide permission or consent, will be a separate engagement.

If the Company plans any issuance or release of the consolidated financial statements on a date other than the initial release date, printers' proofs of the entire documents, including the independent auditors' report, should be submitted to us in sufficient time for our review and performance of additional subsequent events procedures prior to release of the consolidated financial statements. There is no implied consent for release of the consolidated financial statements on a date other than the initial release date.

The examination of the consolidated financial statements and the issuance of our audit opinion are solely for the use of the Company and those to whom our report is specifically addressed. We make no representations of any kind to any third party in respect of these consolidated financial statements and we accept no responsibility for their use by any third party. If our name is to be used in connection with the consolidated financial statements, you will attach our independent auditors' report when distributing the consolidated financial statements to third parties.

We ask that our names be used only with our consent and that any information to which we have attached a communication be issued with that communication unless otherwise agreed to by us.

### Interim Review Engagement

In conjunction with the annual audits for years ended December 31, 2016 and 2017, we will also perform reviews of the Company's interim condensed consolidated financial information for the six-month period ended June 30, 2017 and 2016. The objective of a review is to provide a basis for communicating whether there are any material modifications that should be made to the interim condensed consolidated financial information for it to conform with the standards of the PCAOB. We understand that these interim condensed consolidated financial statements are to be included in documents to be filed with the SEC.

These reviews will be conducted in accordance with the standards of the PCAOB, which will consist principally of performing analytical procedures and making inquiries of persons responsible for financial and accounting matters. It includes obtaining sufficient knowledge of the Company's business and its internal control as it relates to the preparation of both annual and interim consolidated financial information to identify the types of potential material misstatements in the interim consolidated financial information and consider the likelihood of their occurrence, and to select the inquiries and analytical procedures that will provide a basis for communicating whether there are material modifications that should be made to the interim consolidated financial information for it to conform with the standards of the PCAOB. A review is substantially less in scope than an audit conducted in accordance PCAOB standards, the objective of which is the expression of an opinion regarding the consolidated financial statements taken as a whole. Accordingly, we will not express opinions on the interim condensed consolidated financial information.

Management is responsible for the Company's interim condensed consolidated financial information and for establishing and maintaining effective internal control over financial reporting. It is also responsible for identifying and ensuring that the Company complies with the laws and regulations applicable to its activities; making all financial records and related information available to us; adjusting the interim condensed consolidated financial information to correct material misstatements; and affirming that the effects of any uncorrected misstatements pertaining to the periods under review are immaterial, both individually and in the aggregate, to the interim condensed consolidated financial information taken as a whole.

We will communicate to the audit committee (or equivalent) and management any matters that come to our attention as a result of the reviews that we believe may require material modifications to the interim condensed consolidated financial information to make it conform with the standards of PCAOB. We will also communicate any significant deficiencies or material weaknesses that come to our attention. If, for any reason, we are unable to complete our reviews or are unable to obtain or have not obtained limited assurance on the interim condensed consolidated financial information, we may decline to issue reports as a result of our engagements, and we will notify the audit committee (or equivalent) and management. At the conclusion of our reviews, you agree to provide certain representations from management about the interim condensed consolidated financial statements and related matters.



**Fees and Expenses**

Our fees are determined on the basis of time spent on the engagement at the tariff rates of various members of our team. Any disbursements will be added to the billing. The estimate of fees for the services to be provided are as below:

| | |
|---|---|
| Audit for the year ended December 31, 2015 | CDN$40,000 - CDN$45,000 |
| Audit for the year ended December 31, 2016 | CDN$30,000 - CDN$35,000 |
| Related Tax Disclosures | CDN$7,000 - CDN$10,000 |
| Interim reviews | CDN$12,000 - CDN$15,000 |
| Review of prospectus | CDN $20,000 - CDN$25,000 |

Invoices will be rendered as work progresses in accordance with the following schedule:

| | |
|---|---|
| Progress billing #1 Upon signing of engagement letter | CDN$ 25,000 |
| Progress billing # 2 Upon completion of fieldwork | CDN$ 35,000 |
| Final billing – upon release of the Independent auditors' report and review of final filing documents | Remaining amount |

In signing this letter, you acknowledge your approval of the above billing amounts. Invoices expected to be issued that do not adhere to this schedule, or are in excess of the amounts noted above, will be discussed with you for your approval. Fees collected will be applied to overdue invoices first, followed by subsequently issued invoices in order of issuance.

**Other matters**

Based on our Firm's client acceptance and continuance procedures, we will make inquiries and require certain information from the Company before final client acceptance is approved. We reserve the right to decline appointment if the results of our client acceptance procedures are not satisfactory.

The audit is for the general purpose of assessing the performance of management over the prior fiscal year period and not for the purpose of individual investor decisions. As such, no shareholder or investor should make any personal decisions based solely on the audited consolidated financial statements. We have no knowledge of any individual shareholder or investor concerns or intentions.

We will, as permitted by the Rules of Professional Conduct and PCAOB Rule 3526 *Communications with Audit Committees Concerning Independence*, provide additional services upon request, in areas such as taxation, leadership and human resource management, communication, marketing, strategic planning, financial management and technology consulting.

As part of our services, we may submit to you a memorandum containing suggestions for improvement of existing systems of controls, accounting policies and procedures, and related matters that come to our attention during the course of our work.

Our standard terms and conditions, listed below, form part of our mutual understanding of the terms of this engagement.

1.  **Timely Performance –** MNP will use all reasonable efforts to complete, within any agreed-upon time frame, the performance of the services described in the engagement letter to which these Terms and Conditions are attached. However, MNP shall not be liable for failures or delays in performance that arise from causes beyond our control, including the untimely performance by the Company of its obligations as set out in the engagement letter.

2.  **Right to Terminate Services –** The Company may terminate the engagement upon 30 days written notice. If this occurs, the Company shall pay for time and expenses incurred by MNP up to the termination date, together with reasonable time and expenses incurred to bring the services to a close in a prompt and orderly manner. Should the Company not fulfill its obligations as set out herein and in the engagement letter, and in the event that the Company fails to remedy such default within 30 days



following receipt of notice from MNP to that effect. MNP may, upon written notification and without prejudice to its other rights and resources, terminate provision of our services as described in the engagement letter. In such case, MNP shall not be responsible for any loss, costs, expenses, or damages resulting from such termination.

3. **Change Order** – If, subsequent to the date of this engagement letter, the Company requires significant changes to the arrangements set forth in this engagement letter, the Company will be required to agree to the change in scope of the engagement in writing. In a "Change Order" agreement. The "Change Order" agreement will set forth the revised arrangements and scope of services to be performed and any related additional fees associated.

4. **Fees** – Any fee estimates by MNP take into account the agreed-upon level of preparation and assistance from the Company's personnel. MNP undertakes to advise the Company's management on a timely basis should this preparation and assistance not be provided, or should any other circumstances arise which cause actual time to exceed the estimate.

5. **Administrative Expenses** – Administrative expenses include costs such as long distance telephone and telecommunication charges, photocopying, delivery, postage, and clerical assistance. These expenses are based on a percentage of our fees for professional services 5%. Where applicable, federal, provincial, or other goods and services or sales taxes have been paid on these expenses. Other major costs such as travel, meals, accommodation and other significant expenses will be charged as incurred.

6. **Billing** – Bills will be rendered on a regular basis as the assignment progresses. Accounts are due and payable upon receipt. Interest may be charged on the balance of any accounts remaining unpaid for more than 30 days, at a rate of 1.5% per month (19.56% per annum).

7. **Taxes** – All fees and other charges do not include any applicable federal, provincial, or other goods and services or sales taxes, or any other taxes or duties whether presently in force or imposed in the future. The Company shall assume and pay any such taxes or duties, without deduction from the fees and charges hereunder.

8. **Governing Law** – The engagement will be governed and construed in accordance with the laws of the Province of Ontario, and shall be deemed in all respects to be an Ontario contract. The Company and MNP submit to the courts of that jurisdiction with respect to all matters arising under or by virtue of this Agreement.

9. **Working Papers** – MNP owns all working papers and files, other materials, reports and work created, developed or performed during the course of the engagement, including intellectual property used in the preparation thereof. We will provide management with a copy of all practitioner-prepared working papers necessary for the Company's accounting records. MNP may develop software, including spreadsheets, documents, databases, and other electronic tools, to assist us with our assignment. As these tools and working papers were developed specifically for our purposes and without consideration of any purpose for which the Company might use them, any such tools which may be provided to the Company, will be made available on an "as is" basis only, at our discretion, and should not be distributed to or shared with any third party. Except as indicated in the Rules of Professional Conduct or by any legal proceeding, we have no responsibility to share our working papers with you or with any other parties.

10. **Out-sourcing** – MNP may out-source to third party service providers certain data-entry functions. To protect our clients, we have imposed detailed contractual obligations on these service providers regarding the safeguarding, confidentiality and security of your personal information. Nevertheless, our service provider may be required by the applicable laws of a foreign country to disclose personal information in its custody to that country's government or agencies pursuant to a lawful court order made in that country.

11. **Nature of the Limited Liability Partnership (LLP)** – MNP is a registered limited liability partnership, as permitted by legislation enacted in our governing jurisdiction of the Province of Alberta. This legislation provides that a partner of an LLP is not personally liable for any of the debts, obligations, or liabilities of the LLP or any of the other partners which may arise as a result of any negligent act or omission of another partner of the LLP, or by any employee of the partnership, unless such act or omission is committed by the partner him or herself or by a person under the partner's direct supervision and control. All partners of an LLP remain personally liable for any acts or omissions arising as a result

MNP

of their own negligence, and for the acts or omissions of those directly under their supervision or control, and shall continue to be subject to unlimited personal liability for all of the other liabilities of the partnership. The legislation does not reduce or limit in any way the liability of the partnership itself, and all of the partnership's assets and insurance coverage remain at risk.

12. **Release and Limitation of Liability** – The Company and MNP agree to the following with respect to MNP's liability to the Company:

In any action, claim, loss or damage arising out of the engagement, the Company agrees that MNP's liability will be several and not joint and the Company may only claim payment from MNP of MNP's proportionate share of the total liability based on the degree of fault of MNP as finally determined by a court of competent jurisdiction.

For the purposes of this paragraph, "MNP" shall mean MNP LLP and its directors, officers, partners, professional corporations, employees, subsidiaries and affiliates and to the extent providing services under the engagement letter to which these terms are attached, MNP LLP, its member firms, and all of their partners, principals, members, owners, directors, staff and agents; and in all cases any successor or assignee.

13. **Survival of Terms** - The Company and MNP agree that clause 12. will survive termination of the engagement.

In the event that you choose to terminate this engagement based on the terms outlined above, we reserve the right to notify all financial statements users of the change.

The privacy and security of the personal information you provide is important to us. We strive to ensure the strictest compliance with all applicable provincial and federal standards of protection and disclosure of personal information by any and all of our employees, agents, divisions and/or affiliates (referred to collectively as "MNP"). You may review our privacy policy at www.mnp.ca. We will not collect, use, or disclose any of your personal information without your knowledge and consent, unless required to do so by legal authority or the applicable provincial Rules of Professional Conduct.

By signing this engagement letter you agree that for the purposes of this engagement MNP may collect, use, and disclose personal information in accordance with our privacy policy. You also agree that MNP may collect and use personal information from you for the purposes of providing other services or informing you of other opportunities from time to time ("Other Matters"). Personal information that is not relevant to the purposes of this engagement or to any Other Matters will not be disclosed to anyone for any reason without your further prior consent.

The audit documentation for this engagement is the property of our Firm and constitutes confidential information. However, we may be requested to make certain audit documentation available to the PCAOB, SEC, other regulators pursuant to the authority given to them by law or regulation. If requested, access to such audit documentation will be provided under the supervision of Firm personnel. Further, upon request, we may provide copies of selected audit documentation to the regulator. The regulator may intend, or decide, to distribute the copies or information contained therein to others, including other government agencies.

In accordance with professional regulations (and by Firm policy), our client files must be periodically reviewed by provincial or national practice inspectors and by other Firm personnel to ensure we are adhering to professional and Firm standards. Confidentiality of client information will be maintained throughout this process.

The arrangements outlined above will continue in effect from year to year, unless changed in writing.

We believe the foregoing correctly sets forth our understanding, but if you have any questions, please let us know. If you find the arrangements acceptable, please acknowledge your agreement to the understanding by signing and returning the second copy of this engagement letter to us.

It is a pleasure for us to be of service to you. We look forward to many years of association with you and Eurosport Active World Corporation.



Sincerely,

*MNP* LLP

Chartered Professional Accountants
Licensed Public Accountants

RESPONSE:

This letter correctly sets forth the understanding of Eurosport Active World Corporation.

real solutions for real needs
2000 Blvd Ponce de Leon
8th floor Miami, FL, USA

_____          $\underline{C.E.O}$          $\underline{06/12/2017}$
Officer Signature                        Title                              Date

cc: Board of Directors

**MNP** LLP

# PLAINTIFF'S
# EXHIBIT
## "3"

# MEDINA RIVERO

November 22, 2017

MNP LLP
Ajmer Sran, CPA, CA
PARTNER, PUBLIC COMPANIES
111 Richmond Street West
Suite 300
Toronto, ON
M5H 2G4



info@medinarivero.mx

Dear Sirs,

This letter is in reference to the consultation made by Mrs. Irma Velazquez Diaz in her capacity as representative of the company EAWC Tecnologias Verdes S.A. de C.V. (the "Company") regarding the obligation to supply or provide sensitive information (i.e. financial statements) on the Company to you in your capacity as internal auditors of the company Eurosport Active World Corp.

With respect to the opinions expressed herein, we have reviewed the following documents: *(i)* the Company's Articles of Incorporation; *(ii)* last entry in the Company's Stock Record Book; *(iii)* Political Constitution of the United Mexican States; *(iv)* Federal Law on Protection of Personal Data Held by Obligated Entities; *(v)* General Business Corporations Law; and *(vi)* the Federal Criminal Code.

Regarding our review of the documents described in the above paragraph, we have assumed - without having performed an independent verification or investigation of any kind – that:

*(a)*   The Company is not controlled by, nor is it a controlling company of, Eurosport Active World Corp, and consequently it cannot be considered to be an affiliate or subsidiary thereof;
*(b)*   The Company does not govern the financial and operating policies of, nor are its financial and operating policies governed by, Eurosport Active World Corp;
*(c)*   The Company is not an member company, nor is it a managing partner, of Eurosport Active World Corp;
*(d)*   The Company and Eurosport Active World Corp are not linked by tiered or complementary activities;
*(e)*   The Company and Eurosport Active World Corp are independent legal entities whose relationship is strictly commercial;
*(f)*   Consequently, the Company's Financial Statements (the "EEFF" in its Spanish-language acronym) cannot and must not be considered to be

WWW.MEDINARIVERO.MX

# MEDINA RIVERO

consolidated from Eurosport Active World Corp, since these are economic entities that are totally and absolutely individual and independent.

Based on the foregoing and subject to the assumptions and qualifications described herein, it is our opinion that:

1. The Company is not obligated to provide sensitive data (i.e., financial statements), as has been requested of it, given that:



info@medinarivero.mx

   (i)   The Company *(a)* is not controlled by, nor is it a controlling company of, Eurosport Active World Corp; *(b)* it does not govern the financial policies of , nor is it governed by, Eurosport Active World Corp; *(c)* it is not a member company of, nor is it a managing partner of Eurosport Active World Corp; *(d)* it is not an entity that is linked by activities tiered with, or complementary to, Eurosport Active World Corp; *(d)* it is a legal and economic unit independent of Eurosport Active World Corp; *(f)* it is not obligated to consolidate its financial statements;

   (ii)  *(a)* There is no writ or court order from the competent Mexican authority; and *(b)* the Company has the right to protection of its personal data and access thereto, and to state its opposition under the terms of Article 16 of the Political Constitution of the United Mexican States which, in its pertinent part, states the following:

   "Article 16. *No one can be bothered in his person, family, address, papers, or possessions unless by virtue of a written court order from the competent authority, who provides the foundation and substantiates the legal grounds of the proceeding. In trials and proceedings pursued as a trial, which as a rule are established as oral, it will be sufficient that there is documented evidence of said proceedings by any means that provides certainty of its content and of fulfillment of the provisions of this paragraph.*

   *Every person has the right to protection of his personal data and access thereto, correction and cancellation of the same, as well as to state his opposition, under the terms set forth in this law, which will establish the circumstances of exception to the principles governing handling data for reasons of national security, provisions of public order, public safety and health, or in order to protect the rights of third parties... "*

   [Emphasis added]

   (iii) *(a)* There is no Law that states that the Company has the obligation to provide the requested sensitive information (i.e., financial statements); *(b)* there is no joint responsibility with Eurosport Active World Corp, nor are the Financial Statements of the Company and of Eurosport Active World Corp compatible or analogous; *(c)* there is no judicial order, decision, or injunction from a competent authority; *(d)* the

# MEDINA RIVERO

Company's Financial Statements are not necessary for fulfilling obligations deriving from a legal relationship between the Company and Eurosport Active World Corp; *(e)* the Company's Financial Statements are private and do not appear in sources of public access.

The foregoing is pursuant to Article 22 of the Law on Protection of Personal Information Held by Obligated Entities, which states verbatim in its pertinent part:



info@medinarivero.mx

> *"Article 22. The person in charge will not be obligated to obtain consent from the data owner to handle his personal data in the following cases:*
>
> *I. Whenever a law so stipulates, and such circumstances must be in accordance with the foundations, principles, and provisions established in this Law, and under no circumstances may they violate it;*
>
> *II. Whenever the data being transferred between persons in charge is with respect to personal data used for the exercise of specific, compatible, or analogous powers for the purposes that were the reason for handling the personal data;*
>
> *III. Whenever there is a court order, ruling, or injunction founded on and motivated by the competent authority;*
>
> *IV. For recognition or defense of the data owner's right before the competent authority;*
>
> *V. Whenever personal data is required in order to exercise a right or fulfill obligations deriving from a legal relationship between the data owner and the person in charge;*
>
> *VI. Whenever there is an emergency situation that may potentially damage an individual or his property;*
>
> *VII. Whenever the personal data must be handled in order to prevent, diagnose, or provide healthcare assistance;*
>
> *VIII. Whenever the personal data appears in sources of public access;*
>
> *IX. Whenever the personal data is subject to a prior dissociation procedure; or*
>
> *X. Whenever the owner of the personal data is a person reported as missing under the terms of the law on the subject".*

2. Mrs. Irma Velazquez Diaz does not have the legal capacity to provide and supply you with the requested information (i.e. financial statements), given that *(a)* the Financial Statements are property of the Company and therefore she may not have access to said Financial Statements; *(b)* she does not govern the Company's corporate, financial, and operating

# MEDINA RIVERO

policies; and *(c)* violation of the above could result in liability for punitive or consequential damages to the Company, pursuant to the provisions of Articles 178, 264, 157, and 158 of the General Business Corporations Law; and 210, 211, and 382 of the Federal Criminal Code which, for greater clarity, have been transcribed verbatim below in their pertinent parts:

*[General Business Corporations Law]*

*Article 178.- The General Shareholders' Assembly is the highest governing body of the Company;*

*Article 264.- ... The shareholder or shareholders will be supplementarily or jointly and severally responsible, whichever the case may be, to the company for commission of any conduct penalized as crimes...*

*Article 157. The Administrators will have the responsibility inherent to their power of attorney as well as responsibility deriving from the obligations that the law and the bylaws impose on them. Said Administrators must safeguard the confidentiality of the information and the matters they have knowledge of owing to their position in the company whenever said information or matters are not public, except in cases in which the information is requested by judicial or administrative authorities. Said confidentiality obligation will be in effect during the time of his designation and until one year after the termination thereof.*

*Article 158.- Administrators are jointly and severally responsible for/to the company: ...*

*III.- Regarding existence and maintenance of accounting, control, registration, filing, and information systems stipulated by law...*

*[Federal Criminal Code]*

*Article 210.- Thirty to two hundred days' wages will be imposed in the community's favor to anyone who, without justified cause and with harm to someone and without the consent of the person who is harmed, discloses a reserved secret or communication that he knows or has received due to his employment, duties, or position.*

*Article 211.- The penalty will be for one to five years, a fine of fifty to five hundred pesos, and suspension of [exercise of] profession, if the case may be, for two months to one year, if the punishable disclosure is made by a person who provides professional or technical services or [made by] an public officer or employee, or when the disclosed or published secret is industrial in nature.*

*Article 382.- Anyone who, causing harm to someone, avails himself or another person of a third party's personal property of which he has been given custody and not ownership, will be penalized with up to one year in prison and a fine of up to 100 times the minimum wage...*



info@medinarivero.mx

# MEDINA RIVERO

The above opinions are subject to the following limitations and qualifications:

(i)    The content of this opinion is limited to issues of applicable law in Mexico regarding tax matters, treatment of personal data, business corporations, and criminal law in effect on the date hereof.  Therefore, this opinion does not include nor does it express any consideration, comment, or criteria governed by laws other than those applicable in Mexico on the date hereof;

(ii)    We do not issue any opinion whatsoever regarding the validity, legality, or constitutionality of the tax law or criminal law, or regarding business corporations or treatment of personal data.

The above opinions are limited to issues regarding Mexican law in effect on the date hereof, and we assume no responsibility whatsoever in case of updating or modification due to any event that may occur in the future.

*info@medinarivero.mx*

This opinion is issued solely for the benefit of EAWC Tecnologias Verdes SA de CV, and it may not be provided to any other person, nor may it be cited or mentioned in any publication, and no one may base their argument on the opinion contained herein without our prior written consent.

Respectfully,

Medina Rivero & Asociados, S.C.
By: Rafael A. Medina
CEO Founder